Lance Wood #20196229
Eastern Oregon Correctional Institution
2500 Westgate
Pendleton, Oregon 97801

Renee Wood
1911 S. Candlewood Dr.
Nampa, Idaho 83686

Rodney Schilling
9209 Wakefield St.
Boise, Idaho 83714

Plaintiffs pro se

U.S. COURTS

AUG 2 0 2015

Rcvd_____ Filed_____ Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LANCE WOOD, and RENEE WOOD, And RODNEY SCHILLING<br><br>Plaintiffs,<br><br>vs.<br><br>PAUL PANTHER, Deputy Attorney General; MARK KUBINSKI, Deputy Attorney General; BRENT REINKE, Idaho Department of Corrections (IDOC) Director of Prisons; ROBIN SANDY, Chairman of the Idaho Board of Corrections (IBOC); OLIVIA CRAVEN, Executive Director of the Idaho Commission of Pardons and Parole; KEVIN KEMPF, Chief of Idaho Prisons; WILLIAM FRUEHLING, Office of Professional Standards Chief Investigator; RANDY BLADES, Warden of Idaho State Correctional Institution | Case No. 1:15-cv-00092-CWD<br><br>**FIRST AMENDED CIVIL RIGHTS COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

1

(ISCI);  KEITH YORDY, Deputy Warden
of Idaho State Correctional Institution
(ISCI), ALAN STEWART, ISIC Paralegal;
JAMES DU TOIT, ISCI Investigator;
KARA NIELSON, ISCI Investigator;
MATHEW BUIE, Detective for Ada
County Sheriff's Department; MR.
WILSON, Detective for Ada County
Sheriff's Department; and John and Jane
Does; all named defendants are named in
their individual and official capacities,

Defendants,

## I. JURISDICTION

1. The Federal Court of Idaho has jurisdiction over Plaintiffs claims pursuant to 42 U.S.C. 1983;

42 U.S.C. 1985(2)(3); 42 U.S.C. 1331; and 28 U.S.C. 1343(a)(3).

## II. VENUE

2. The Federal Court of Boise Idaho is an appropriate venue under 28 U.S.C. 1391(b)(2), because

a substantial part of the events or omissions given rise to Plaintiffs claims occurred in this

district.

## III. PARTIES

3. Plaintiff Lance Wood is a citizen of Oregon presently presiding at Eastern Oregon

Correctional Institution (EOCI), 2500 Westgate, Pendleton Oregon 97801.

4. Plaintiff Renee Wood is a citizen of Idaho presently residing at 1911 South Candlewood

Drive, Nampa Idaho 83686.

FIRST AMENDED CIVIL RIGHTS COMPLAINT

5. Plaintiff Rodney Schilling is a citizen of Idaho presently residing at 9209 Wakefield St.

Boise, Idaho 83714.

6. Defendant Paul Panther is a citizen of Idaho whose address is 1299 North Orchard, Suite 110,

Boise Idaho 83720. Mr. Panther is the Deputy Attorney General for Idaho and is responsible for

investigating and representing employees for the Idaho Department of Corrections (IDOC). He is

sued in his individual and official capacity.

7. Defendant Mark Kubinski is a citizen of Idaho whose address is 1299 North Orchard, Suite

110, Boise Idaho 83720. Mr. Kubinski is the Deputy Attorney General for Idaho and is

responsible for investigating and representing IDOC employees. He is sued in his individual and

official capacity.

8. Defendant Brent Reinke is a citizen of Idaho whose address is 1299 North Orchard, Suite 110,

Boise Idaho 83720. Mr. Reinke was the IDOC Director of Prisons at the time of the events

depicted herein this complaint, and was responsible for overseeing the operations of all IDOC

prisons. He is sued in his individual and official capacity.

9. Defendant Robin Sandy is a citizen of Idaho whose address is 1299 North Orchard, Suite 110,

Boise Idaho 83720. Ms. Sandy is the IBOC Chairman and oversees the development of IDOC

policy. She is sued in her individual and official capacity.

10. Defendant Olivia Craven is a citizen of Idaho whose address is 1299 North Orchard, Suite

110, Boise Idaho 83720. Ms. Craven is the IDOC Executive Director of the Commission of

Pardons and Parole, and oversees the Idaho Parole Board. She is sued in her individual and

official capacity.

11. Defendant Keven Kempf is a citizen of Idaho whose address is 1299 North Orchard, Suite

110, Boise Idaho 83720. Mr. Kempf is the IDOC Chief of Prisons, and responsible for

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

overseeing the operations of the IDOC. He is sued in his individual and official capacity.

12. Defendant William Fruehling is a citizen of Idaho whose address is 1299 North Orchard, Suite 110, Boise Idaho 83720. Mr. Fruehling is the Chief Investigator of OPS, and is responsible for overseeing the investigations into IDOC staff misconduct. He is sued in his individual and official capacity.

13. Defendant Randy Blades is a citizen of Idaho whose address is 13500 South Pleasant Valley Road, Kuna Idaho 83643. Mr. Blades was the ISCI warden at the time of the events depicted herein this complaint, and was responsible for overseeing the operations at ISCI. He is sued in his individual and official capacity.


14. Defendants Keith Yordy is a citizen of Idaho whose address is 13500 South Pleasant Valley Road, Kuna Idaho 83634. Mr. Yordy is the Deputy Warden at ISIC, and is responsible for overseeing the security at ISCI.  He is sued in his individual and official capacity.

15. Defendant Alan Stewart is a citizen of Idaho whose address is 13500 South Pleasant Valley Road, Kuna Idaho 83634.  Mr. Stewart is the ISCI Paralegal and responsible for maintaining the ISCI Resource Center. He is sued in his individual and official capacity.

16. Defendant James Du Toit is a citizen of Idaho whose address is 13500 South Pleasant Valley Road, Kuna Idaho 83634.  Mr. Du Toit is a Sargent and heads up ISCI investigations and is responsible for overseeing the internal investigations conducted at ISCI.  He is sued in his individual and official capacity.

17. Defendant Kara Nielson is a citizen of Idaho whose address is 13500 South Pleasant Valley Road, Kuna Idaho 83634. Kara Nielson is an ISCI investigator and is responsible for internal investigations conducted at ISCI.  She is sued in her individual and official capacity.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

18. Defendant Mathew Buie is a citizen of Idaho whose address is 7200 Barrister Drive, Boise Idaho 83634. Mr. Buie is a detective for the Ada County Sheriff's Department and is responsible for conducting criminal investigations. He is sued in his individual and official capacity.

19. Defendant Mr. Wilson is a citizen of Idaho whose address is 7200 Barrister Drive, Boise Idaho 83634. Mr. Wilson is a detective for the Ada County Sheriff's Department and is responsible for conducting criminal investigations. He is sued in his individual and official capacity.

20. Defendants John and Jane Does are citizens of Idaho and are or were employed by the IDOC or by the county or state of Idaho, and will be named after discovery. They are sued in their individual and official capacity.

21. All named Defendants acted under of color of law during each of Plaintiffs claims raised herein this complaint.

## IV Factual Accounts

A.  Defendants Paul Panther, Mark Kubinski, Brent Reinke, Robin Sandy, Olivia Craven, Kevin Kempf, William Fruehling, Randy Blades, Keith Yordy, Alan Stewart, James Du Toit, and Mathew Buie, denial of access to courts, retaliation, harassment, and blackmail against Plaintiffs Lance and Renee Wood.

22.  Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades, Yordy, Stewart, Du Toit, and Buie are part of or are associated with the Good Old' Boys and Girls organization that operate in violation of the Constitution, State and Federal law, and IDOC Policies.

FIRST AMENDED CIVIL RIGHTS COMPLAINT

23. The IDOC Good Old' Boys and Girls exist to profit financially, promote and create jobs for those part the group, and to protect all its members from criminal, civil, and inner departmental complaints raised by IDOC staff not part of their group, citizens, and prisoners.

24. Lance and Renee Wood started to work together on prison reform in July 2012 to reveal the corruption of the Good Old' Boys and Girls. Renee was married to State Senator Curtis McKenzie and worked at his law firm as a paralegal and had been working on prison reform since 2007 after receiving complaints from IDOC staff, prisoners and their families. Lance had been working on prison reform since 2001, and was appointed as a class representative on December 18, 2007 for Balla v. Idaho State Board of Corrections Case No. CV 81-1165-S-BLW.

25. In August 2012 Lance hired Renee as his paralegal to assist with all his lawsuits against the IDOC and was considering retaining McKenzie Law to represent him at his Utah parole hearing.

26. On or about December 6, 2012 and February 6, 2013 Judge Winmill granted Lance's Motions to appoint Renee as his legal assistant in Wood v. Martin Case No. 3:04-cv-99-BLW.

27. On December 20, 2012 Judge Winmill declared a mistrial in Wood v. Martin Case No. 3:04-cv-99-BLW after an IDOC official contacted one of the jury members and intimidated her to the extent that the jurist was unable to continue the trial. A new trial date was scheduled for April 8, 2013.

28. During trial Defendants Panther, Kubinski, and Yordy learned that Plaintiff Lance Wood had documents and current and past IDOC staff ready to testify at trial that incriminated the Good Old' Boys and Girls. Defendant Stewart was told to comb through all Lance's legal material when he returned to ISCI after the Federal case mistrial.

29. During trial, Plaintiff Rodney Schilling was called by Plaintiff Lance Wood as a rebuttal witness. Plaintiff Rodney Schilling testified via telephone that Defendant Yordy was part of the

FIRST AMENDED CIVIL RIGHTS COMPLAINT

Good old Boys network.  Plaintiff Schilling testified that Defendant Yordy would target anyone who testified to the retaliation and harassment that occurred in the IDOC's working environment.

30.  When Lance returned to ISCI after the December 17-20, 2012 Federal mistrial Defendant Stewart was waiting to search his legal material, but he was stopped ten minutes into the search before Stewart could obtain these documents.  Lance was allowed to release all his legal documents to Renee that he did not want Stewart to see.

31.  On February 7, 2012 Defendants Panther, Kubinski, Reinke, and Blades denied Renee access to Lance at ISCI to prepare for his new trial.  No reason was given for denying her access to Lance at that time.

32.  After an ex parte communication between the court and Defendant's counsel Keely Duke, Judge Winmill ordered a hearing for February 14, 2013 to address whether to rescind his order appointing Renee as Lance's legal assistant.

33.  Judge Winmill appointed Lance an attorney and suggested Renee hire an attorney due to the possibility of criminal charges being brought against them, and Renee hired an attorney.

34. At the February 14, 2013 hearing IDOC attorney Duke addressed a legal/personal letter Lance had mailed to Renee.   Judge Winmill denied knowledge of the letter's contents and did not review the letter in question.

35.  Judge Winmill, Defendants Panther, Kubinski, and IDOC attorney Keely Duke knew the letter held no relevance to the case, posed no security threat to the prison, and didn't violate any IDOC Policy.

36. At the February 14, 2013 hearing Defendants Panther, Kubinski, and IDOC attorney Duke presented false testimony regarding IDOC's legal, personal mail, and visiting policies and procedures.  Defendants also presented false testimony regarding the reason the letter in question

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

was opened, and when the letter was opened.

37. At the February 14, 2014 hearing Defendants Panther, and Kubinski conveyed through Duke that Renee did nothing wrong and she needed to be afraid because Lance was a sexual predator. At no time from February 7, 2013, did any IDOC employ let Renee know that she might be in danger. Their motives were purely political.

38. Judge Winmill and Defendants Panther and Kubinski knew Renee was in possession of Lance's trial preparation material, exhibits, and she was his only access to some of his witnesses.

39. Although Renee violated no Federal law, State law, court rule, or IDOC Policy, Judge Winmill rescinded her appointment as Lance's legal assistant.

40. All Defendants in this case and the Good Old' Boys and Girl, benefitted from Judge Winmill's resending his order appointing Renee as Lance's Legal assistant.

41. When Lance and Renee continued their fight for prison reform, Defendants Kubinski, Reinke, Sandy, Craven, Kempf, and Fruehling met on February 20, 2013 where they determined to place Lance in segregation pending investigation (SPI) at the Idaho Maximum Security Institution (IMSI) to investigate the letter and remove her from any "perceived" danger Lance posed.

42. On the morning of the February 20, 2013 court telephonic hearing, Lance's cell was torn up and some of his legal material was taken by the ISCI Goon Squad, and after the court telephonic hearing on February 20, 2013, Lance was hand-cuffed and taken to IMSI. He was not provided any reason for being in SPI as required by IDOC Policy.

43. On February 21, 2013 Defendants Du Toit and Stewart searched Lance's legal material for over seven (7) hours then confiscated trial preparation material, legal evidence, witness's declarations, photos, notes and letters. These items were not returned.

FIRST AMENDED CIVIL RIGHTS COMPLAINT

44. Lance was not provided his legal material needed to prepare for the February 25, 2013 hearing, new trial, and his other pending lawsuits.

45. Before Lance was taken to IMSI, he had scheduled a psychological evaluation for when he applied for his parole hearing and to use at trial for all his lawsuits. Psychologist Michael Johnston was denied access to him on February 22, 2013 even though the meeting had been authorized, and scheduled.

46. On February 23, 2013 attorney Scott Larson, tried to see Lance at IMSI about his case, but Mr. Larson was denied access to Lance.

47. At the February 25, 2013 court hearing Defendants Panther and Kubinski's reason for placing Lance in SPI changed from the "letter" investigation to a "planned escape". It was also conveyed that Renee did nothing wrong.

48. Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, and Frueling separated Lance and Renee to break up their relationship and to prevent them from proceeding with their future litigation against the Good Old' Boys and Girls.

49. Defendants Panther and Kubinski scheduled a meeting for March 1, 2013 between Renee and Senator McKenzie where they admitted Renee did nothing wrong, and used intimidating tactics to convince her to drop her fight for prison reform and assisting Lance.

50. At this meeting Defendants Panther and Kubinski claim that prior to the February 14, 2013 hearing Judge Winmill's clerk instructed them to listen to one of the phone calls they had recorded on the secure line for attorney phone calls before presenting it to Judge Winmill.

51. IDOC monitors and records all attorney client phone calls.

52. When Defendants Panther, Kubinski, and Blades discovered that Renee was continuing her fight for prison reform, Panther contacted Senator McKenzie to inform him of her continued

FIRST AMENDED CIVIL RIGHTS COMPLAINT

activity in Lance's case.

53. When Renee submitted her affidavit in Lance's case, and refused to end her fight for prison reform, Defendants Panther and Reinke met with Senator McKenzie at the State Capital during a Legislative session and told him that if Renee didn't back off the investigation report on Lance and Renee's relationship would be leaked to the press, and they provided him with a copy.

54. Senator McKenzie confronted Renee with the investigation report and told her if she didn't stop he would divorce her and take the kids out of state.  Senator McKenzie terminated her employment with McKenzie law.

55. While in SPI at IMSI nobody came to question Lance about the "planned escape" or anything else.

56. On March 5, 2013 Lance was moved back to ISCI.  On March 12, 2013 he received one box of his legal material, but the remainder of his legal material was withheld from him. Two hours later the legal material was searched by two ISCI staff after Defendant Du Toit claimed "escape plans" were hidden inside.

57. On March 17, 2013 an IDOC official visited Lance and told him that if he didn't dismiss all his lawsuits and end all communication with Renee, their relationship would be leaked to the press, and charges filed against her for practicing law without a license, and Lance had to agree to be sent back to the Utah State Prison.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

58. During the same time frame as of when the IDOC official met with Lance at ISCI, Renee was being told by defendants that Lance was using and manipulating her.

59. On March 19, 2013 attorney Nate Peterson was denied access to Lance by ISCI staff.

60. On March 2013 Lance was forced to cancel his psychological evaluation due to Defendant Du Toit's investigation.

61. Renee's marriage to Senator McKenzie had been over for five years. She planned on divorcing him when their children turned eighteen. Defendants knew from listening in on all their telephone conversations that no matter what, Renee's children could not find out about their relationship. Defendants used this information against Lance and Renee and both reluctantly agreed to end their relationship.

62. On or about two days after Lance and Renee had ended their relationship; they spoke and decided to continue with their fight for prison reform.

63. ACLU attorney Richie Epink was denied access to Lance twice by ISCI staff.

64. On April 13, 2013 Lance and Renee spoke on the telephone at 2:30 p.m., for about an hour. Around 8:30 p.m. Lance was called into the office and told he was going to be placed in a strip cell because Du Toit said that he was suicidal. Du Toit sent the Nampa Police out to Renee's house to conduct a welfare check because he told them she was suicidal.

65. Lance was not placed into a strip cell after the ISCI staff sent to take him knew he was not suicidal and Renee was determined to not be suicidal by the Nampa Police.

66. On June 4, 2013 Defendant Buie came to speak to Lance at ISCI. Buie told Lance that he was out there at Defendant Du Toit's request. Buie read Lance his Miranda rights then asked him about Renee and whether her husband knew if they were still together.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

67. Du Toit came down later and asked Lance whether Renee had ever represented herself as an attorney.  Lance told them that Renee had never represented herself as an attorney to anyone, and ended the interview.

68. On June 5, 2013 Lance was placed again in SPI for "planned escape".  Five to six days in SPI an investigator stopped in front of his cell's door and told him that if he didn't start to cooperate with Du Toit's investigation into allegations about Renee, Lance would be shipped back to Utah.

69. For fourteen days in SPI Defendants Blades and Stewart denied Lance's requests to be provided his legal material.

70. While Lance was in SPI nobody came to question him about the "planned escape".

71. On June 12, 2013 Lance was put into a van and was transferred to the Oregon Department of Corrections without any transfer file, or medical file accompanying him.

72. Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades, Yordy, Du Toit, Stewart, and Buie's investigation into Lance and Renee, was conducted out of retaliation and harassment, and to gather information in order to blackmail Lance and Renee from continuing with their right to access the courts.

73. The investigation report presented false information and Lance and Renee's conversations were taken out of content.

74. Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Frueling, Blades, Yordy, Du Toit, and Buie, knew that Renee was preparing to campaign for state office and provided the investigation report that included telephone recordings between Renee and Lance and their letters to the Idaho Senate Pro Tem as well as the Idaho Press in order to

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

ruin Renee's reputation, and prevent her from campaigning for public office.

75. Defendants Blades and Du Toit barred all contact between Lance and Renee knowing she possessed legal material needed to proceed with Lance's current litigation and their future case.

76. Lance and Renee's lawsuit against Defendants was further hindered by Defendants transferring Lance out of state where they were unable to access their legal material for over three months and continue to have problems preparing their case against the Good Old' Boys and Girls. When Lance finally received his legal material, it was shuffled together all out of organization and important documents and legal evidence was missing.

77. Defendants prevented Lance and Renee's witnesses from having their affidavits notarized and gaining access to the ISCI Resource Center.

78. Lance was forced to settle his lawsuit: Wood v. Martin 3:04-cv-99-BLW when Judge Winmill allowed Defendants Panther, Kubinski, Reinke, Blades, Yordy, Du Toit, Stewart and the Good Old' Boys to continue to threaten, retaliate, and harass his prisoner and officer witnesses, and prevent witnesses from filing affidavits in his behalf.

79. Lance stated to Judge Winmill and Judge Williams and that he was being forced to settle his case due to Defendants actions as defined herein this complaint.

80. Lance stated at the settlement conference that he was being forced to settle his lawsuit based on Judge Winmill failing to enforce his order that ordered Defendants to pick up and deliver his witness declarations to the courthouse and based on Defendants barring all of his legal filings to the court.

81. Renee was retaliated and harassed for being Lance's legal assistant and witness.

82. Defendants prevented all of Lance's legal filings from being filed with the courts in

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

(Wood vs. Reinke et. all 1:11-cv-355-EJL, Wood vs. Wamble Fisher et. all 1:12-cv-473-EJL) by Defendants not allowing these motions for extension of time and responses to the Defendants motions from making it to the court.  Lance suffered actual prejudice when he was forced to settle his case and from the other cases being dismissed.

83. Prisoners Barry Searcy and Milo Beason worked with defendants by speaking to other prisoners, Renee and Lance and ISCI staff, to gather information on Lance and Renee's planned litigation against them and to collect information that would damage Lance and Renee's reputation and to have Lance removed as a Balla Representative and to turn their witnesses against them.

84. On April 16, 2013, acting on Searcy and Beason's fabrications, Judge Winmill removed Lance as a Balla Class Representative after defendants and Balla Attorney Jason Prince filed a motion to remove Lance as a Balla class representative.

85. Lance and Renee were revealing the ghost positions Defendants were creating and how they were misrepresenting their need for money to legislators for the Balla case and prison operations.

86. Defendants didn't provide Oregon Department of Corrections (ODOC) with Lance's institutional file, and only provided them with the newspaper article about Lance and Renee's relationship in order to continue their retaliation and harassment, and blackmail.

87. Due to defendants retaliatory transfer, and information they provided ODOC Lance and Renee have suffered hardships in denial of visitation and marriage from June 2013 through February 2015.

88 Defendants have given ODOC the impression that Lance and Renee Wood are a risk to the safety and security of the Department of Corrections.  Defendants have no actual facts to

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

support this accusation of a threat to the safety and security of the Department of Corrections.

89. Defendants wanted to separate Lance and Renee to break up their relationship.

90. Due to the retaliatory transfer, Lance sustained a change in custody and program benefits that would have been beneficial when he submitted to the Utah Parole Board.

91. Defendants retaliatory transfer of Lance to another state resulted in Lance's mother and family members not being able to attend Lance and Renee's wedding.

92. Defendants retaliatory transfer of Lance Wood to another state resulted in traveling expenses and attorney costs to Renee Wood.

93. Defendants retaliatory transfer of Lance to another state resulted in Lance and Renee's prisoner and officer witnesses' to fear being punished if they seek access to the courts or being a witness for them against Defendants.

94. Defendants retaliation, harassment, and blackmail ruined Renee's political aspirations, and resulted in her resigning early from her position of President of Idaho Coalition of Charter School Families.

95. Defendants retaliation, harassment, and blackmail resulted in Renee pursuing a different career and going back to school.

96. Defendants retaliation, harassment and blackmail resulted in a loss of wages and additional income she would have earned working as a paralegal at McKenzie Law.

97. Defendants retaliation, harassment, and blackmail resulted in a chilling effect on Lance and Renee's ability to communicate by mail and telephone, and to seek access to the courts.

98. Defendants retaliation, harassment, and blackmail resulted in undue hardship in Lance

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

and Renee's relationship.

99. Defendants retaliation, harassment, and blackmail resulted in actual prejudice in Lance and Renee's litigation against them and the Good Old' Boys and Girls.

100. Due to the IDOC not having a law library or any persons trained in the law Lance was hindered in his ability to file his Utah Post Conviction, Federal Habeas Corps, and state and federal appeals, and suffered actual prejudice when they were dismissed.

101. Defendants stole and destroyed evidence throughout Lance's litigation against ODOC officials that hindered his ability to proceed in his lawsuits.

102. Defendants have used Federal Court Judges: Winmill, Lodge, Bush, and Williams to protect the Good O' Boys and Girls from individuals who have filed litigation against them, and to instill fear into any individual seeking to file litigation against them.

103. The majority of IDOC medical and prison staff, and prisoners have no trust in the Federal Court system because they believe the Idaho Federal Court works hand in hand with the Good Old' Boys and Girls.

104. Federal Judges Winmill, Lodge, Bush, and William have not held Defendants accountable for stealing and destroying evidence, retaliating and harassing Lance and Renee and witnesses, making false claims and submitting false evidence, and allowing them to operate outside of the Federal Rules of Civil Procedure and violate court orders.

105. Due to Defendants theft and destruction of evidence, making false statements, retaliating and harassing Lance and witnesses, and preventing court filing from reaching the court case Wood v. Reinke et al., Case No. 1:11-cv-00355-EJL was dismissed in 2013.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

106. Due to defendant's theft and destruction of evidence, making false claims, retaliating and harassing Lance and witnesses, and preventing court filing from reaching the court the case Wood v. Wamble-Fisher, Case No. 1:12-cv-00473-EJL was dismissed in June 10, 2013.

107. Due to Defendants working with prisoners Searcy and Beeson to protect the Good Old' Boys and Girls, making false claims to the court, and preventing court filing from reaching the court, Lance was removed and a class representative in Balla v. IDOC, et al., Case No. 1:18-cv-1165-BLW- on April 16, 2013.

108. Plaintiff Lance Wood represented the majority of ISCI prisoners wishing not the settle the Balla case out. Due to the medical and living conditions and the prison becoming worse when the Balla case was originally filed.

109. Defendants Panther, Kubinski, Reinke, Sandy, Kempf, Fruehling, Blades, Yordy, Stewart, and Du Toit committed fraud with the court in order to have plaintiff Lance Wood settle his lawsuit in Wood v. Martin Case 3:04-cv-99-BLW; to have the court dismiss Lance's lawsuits in Wood vs. Reinke 1:11-cv-355-EJL, and Wood v. Wamble-Fisher 1:12-cv-473-EKL, by submitting false testimony, falsifying evidence, destroying evidence, threatening, retaliating, and harassing Lance and his witnesses, and blackmailing Lance and Renee Wood.

110. Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades and Yordy were preparing to file motions: 1) to withdraw the settlement in Wood v. Martin based on defendants in that case not abiding by the conditions of the settlement agreement;

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

2) For contempt based on Defendants blocking all his access to the courts by not filing his motions and responses he made in Wood v. Reinke 1:11-cv-355-EJL, Wood v. Wamble-Fisher 1:12-cv-00473-EJL, and Balla v. IDOC; 3) to challenge his dismissal as a Balla class representative; 4) or file new litigation against the Good Old' Boys and Girls with Renee Wood; and 5) filing his State Habeas to challenge Lance's DOR s and visitation with Renee.

111. Defendants prevented Lance from doing these tasks by blocking every attempt he and his witnesses made to file anything with the court, preventing documents reaching the court, preventing Lance from contacting his witnesses, placing Lance in SPI, then transferring Lance out of state.

112. Defendants Panther, Kubinski, Reinke, Kempf, Blades, Yordy, Du Toit, and Buie continued to harass, retaliate, and make good on their blackmail threats against Plaintiffs Lance and Renee Wood by communicating with ODOC employees to damage their reputation, destroy their relationship, and deprive them of visitation and marriage.

113. Defendants Panther, Reinke, Kempf, Blades, Yordy, and Du Toit blocked Plaintiff Renee from contacting all McKenzie Law current and potential clients in all the IDOC prisons which cost McKenzie Law potential income.


B. Defendants Paul Panther, Mark Kubinski, Brent Reinke, Randy Blades, Alan Stewart, James Du Toit, legal mail violations against Lance and Renee Wood.


**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

114. Two (2) letters containing documentation and information regarding Lance appeal that he mailed to his Washington, D.C. attorney Warren Postman were never mailed out by Defendant Stewart.

115. IDOC Access to Court Policy 405 defines legal mail as confidential communications directly between (a) an offender and an attorney (for the purposes of seeking or providing legal services only), (b) an offender and court, (c) opposing parties for service of documents (pursuant to court rules).

116. Lance was acting as his own attorney in his Federal lawsuits and the Federal court required Lance to conduct himself in compliance with the Idaho Rules of Professional Conduct for attorneys.

117. Renee was employed by Plaintiff Lance Wood as his legal assistant then appointed by the Federal court as his legal assistant.

118.    From July 2012 to February 2013 all correspondence between Lance and Renee was treated as legal mail by the ISCI Resource Center and was always opened by prison staff in Lance's presence.

119. At no time was there any contraband found by prison staff or determined by prison staff to be in any of Lance and Renee's incoming or outgoing legal mail.

120.    Lance's legal mail was returned to his Washington D.C. attorney Warren Postman after Lance was transferred out of Idaho.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

121. Lance Wood's Habeas Corpus filed against Defendant Blade's denial of his visitation with Renee and the Disciplinary Offense Reports were never mailed out to the State court by Defendant Stewart.

122. Letters written the Sherriff's Department the Ada County Prosecutor, were never mailed to them, and the letter mailed to Ada County Prosecutor was returned after his transfer to Oregon.

123.   Lance's documents were notarized by Stewart and there will be a record of the notarization, but no record of the court receiving the documents.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

C.   Defendants Paul Panther, Brent Reinke, Randy Blades, and James Du Toit's delaying,

   withholding, and destroying Plaintiffs Lance and Renee Wood's personal mail.

124.   IDOC Mail Policy 402 requires prison staff to deliver any incoming mail that presents no

procedural problems to prisoners within 24 hours of receipt.  IDOC Mail Policy 402 requires

prison staff to deliver any incoming mail to the prisoner within two (2) business days if the

prisoner is on a monitored mail list.  IDOC Policy 402 requires prison staff to notify the prisoner

if any mail is delayed for investigation purposes.  IDOC Policy 402 requires prison staff to

forward any mail to prisoners that are no longer housed within the IDOC for sixty (60) days.

125. Lance and Renee wrote to each other every day. Renee at times would write and mail three

letters a day, some containing case law, newspaper articles, or internet stories.

126. Defendants Blades, and Du Toit knowingly violated IDOC Mail Policy 402 by delayed

every letter written by Lance and Renee and mailed to each other for over two (2) weeks, and at

times for three (3) weeks.

127. Defendants Blades, and Du Toit knowingly violated IDOC Mail Policy 402 by delaying

letters written by Lance and his family, friends, and contacts, and mailed to each other for over

two (2) weeks.

128. Defendants Blades, and Du Toit knowingly violated IDOC Policy 402 by not informing

Lance that his incoming and outgoing mail was being delayed.

129.   Defendants Blades, and Du Toit withheld nine (9) to ten (10) letters written by Lance to

Renee from ever reaching her.  Defendants Blades, and Du Toit prevented fourteen (14) to

sixteen (16) letters written by Renee from ever being delivered to Lance.

130. Defendants Blades, and Du Toit removed over six (6) newspaper articles from Renee's

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

letters and never returned them.

131.    Defendants Panther, and Reinke, were informed by Lance and Renee about Defendants Blades, and Du Toit withholding their personal mail for over two (2) weeks, sometimes three (3) weeks, and about the letters and newspaper articles that were never delivered to them.

132.     Not one personal letter delayed or withheld from Lance and Renee were determined to pose a security threat.  Defendants Blades, and Du Toit knowingly had more than fifteen (15) incoming letters to Lance returned to the sender - some marked "History" on the return envelope after they transferred him out of IDOC custody.

133.    Defendants delayed and withheld Lance and Renee's mail from them for retaliation and harassment purposes.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

D.      Defendants Paul Panther, Mark Kubinski, Brent Reinke, Kevin Kempf, and Randy Blades visitation violation.

134. On March 15, 2013 Defendant Panther suggested to Renee to apply for regular visitation with Lance.

135.    Defendant Blades spoke to Lance and told Lance that he would approve

Defendant Blades expressed he would deny visitation against Lance and Renee unless he was assured that Lance no longer posed a risk to Renee.

Lance addressed this issue to Defendant Blades, and Blades said that he would support the approval of Lance and Renee's visitation, but before he could do that Blades told Lance that he would have to address this issue at his settlement conference.

136.  Renee was denied visitation with Lance on April 18, 2013 by order of Defendant Blades. The denial of Lance and Renee's visitation was not based on any security concerns, and was defendants continued retaliation and harassment against them.


E.  Defendant Panther Kubinski, Reinke, Kempf, and Blades medical deliberate indifference.

137.    Lance suffers from Iritis and chronic pain and was receiving treatment for both serious medical conditions while at ISCI in the form of prescription eye drops, glasses, sunglasses, and pain medication.

138.    IDOC policy states that if a prisoners medical file will accompany him at all times from institution to institution.

139.    When defendants transferred lance to ODOC they did not provide any information regarding his serious medical conditions and did not send his medical file.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

140.   ODOC repeatedly requested Lance's medical file from IDOC but was not provided Lance's medical file until on or about December 2014.

141.   Lance was removed from all his medical treatment when he arrived at ODOC and has been denied his medical treatment for each of his conditions as the date of this complaint.

142.   Due to the Defendants retaliatory and harassing transfer and their knowingly keeping his medical file from ODOC, lance has suffered severe pain and has had several Iritis attacks and continues to be denied medical treatment.

F.  Defendants Panther, Kubinski, Reinke, Kempf, Fruehling, Blades, Yordy, Nielson, and Wilson, denial of access to court, retaliation, harassment, violations against Plaintiff Schilling.

143.  Schilling was employed by IDOC from July 2006 to August 2013 when he was fired.

144.  Schilling became a Sargent in his first year of employment at IDOC.

145.  During the course of his employment he was an upstanding officer.  During his employment, he knew about the good old boys organization.  He feared the good old boys network as did the majority of IDOC employees he spoke with.

146.  During the December 17 – 20, 2012 Federal trial (Wood vs. Martin 3I04-cv-99-BLW ) Schilling testified for Plaintiff Lance Wood against the IDOC Good Old Boys and girls network and against defendant Yordy .

147.  Schilling wanted to help end the corruption of defendants so he testified against them.

148.  After testifying against the Good Old Boy network, Schilling started to be harassed, retaliated against, and investigated for false accusations of bringing contraband into ISCI requested by offenders Milo Beeson and Lance Wood.

149.  Schilling was accused of serving papers to another IDOC employee while in uniform.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

150. Schilling suffered from emotional and undo hardships for exercising his first amendment right to seek regress of his concerns against the IDOC Good Old Boys and Girls.

151. IDOC Good Old Boys and Yordy's actions against Schilling had a chilling effect on him to raise further complaints or seek court action against them until now.

152. The harassment consisted of: treating him differently than other employees, accusing him of bringing in contraband, serving papers while in uniform, and removing him of his IDOC position.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

## V Cause of Action

## COUNT I

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades, Yordy, Stewart, Du Toit, and Buie, operating and or associating with the Good Old' Boys and Girls criminal organization to prevent all IDOC employees, prisoners, and citizens not part of their group from raising any inner departmental or criminal complaints, or filing any lawsuits, or being a witness against any of its members or those associated with them, through acts of violence, threats, retaliation, harassment and intimidation, amounts to a denial of Political Expression in violation of Plaintiff Renee Wood's First Amendment rights to the United States Constitution of America.

## COUNT II

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades, Yordy, Stewart, Du Toit, and Buie, operating and or associating with the Good Old' Boys and Girls criminal organization to prevent all IDOC employees, prisoners, and citizens not part of their group from raising any inner departmental or criminal complaints, or filing any lawsuits, or being a witness against any of its members or those associated with them, through acts of violence, threats, retaliation, harassment and intimidation, amounts to deliberate indifference to Plaintiff Lance Wood's serious medical needs of iritis and chronic pain in violation of his Eighth Amendment to the United States Constitution of America.

## COUNT III

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

26

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades, Yordy, Stewart, Du Toit, and Buie, operating and or associating with the Good Old' Boys and Girls criminal organization to prevent all IDOC employees, prisoners, and citizens not part of their group from raising any inner departmental or criminal complaints, or filing any lawsuits, or being a witness against any of its members or those associated with them, through acts of violence, threats, retaliation, harassment and intimidation, amounts to cruel and unusual punishment in violation of Plaintiffs Lance Wood and Renee Wood's Eighth Amendment right to the United States Constitution of America.

## COUNT IV

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Frueling, Blades, Yordy, Stewart, Du Toit, and Buie retaliation against Plaintiffs Lance and Renee Wood as described herein this complaint, amounts to violation of Plaintiffs First Amendment rights to the United States Constitution of America.

## COUNT V

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Fruehling, Blades, Yordy, Stewart, Du Toit, and Buie, operating and or associating with the Good Old' Boys and Girls criminal organization to prevent all IDOC employees, prisoners, and citizens not part of their group from raising any inner departmental or criminal complaints, or filing any lawsuits, or being a witness against any of its members or those associated with them, through acts of violence, threats, retaliation, harassment and intimidation, amounts to a denial of equal treatment in violation of Plaintiffs Lance Wood and Renee Wood's Fourteenth Amendment rights to the

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

United States Constitution.

## COUNT VI

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Frueling, Blades, Yordy, Stewart, Du Toit and Buie calculated harassment and cruel and unusual punishment against Plaintiffs Lance and Renee Wood as described herein this complaint, amounts to violation of Plaintiffs Eighth Amendment right to the United States Constitution of America.

## COUNT VII

By Defendants Panther, Kubinski, Reinke, Sandy, Craven Kempf, Frueling, Blades, Yordy, Stewart, Du Toit, and Buie denying Plaintiffs Lance and Renee Wood Freedom of Speech and Freedom of Association as described herein this complaint, amounts to violation of Plaintiffs First Amendment Rights to the United States Constitution of America.

## COUNT VIII

By Defendants Panther, Kubinski, and Reinke, acts of blackmail and following through on their blackmail threats against Plaintiffs Lance and Renee Wood as descried herein this complaint, amounts to violation of Plaintiffs First and Eight Amendment rights to the United States Constitution of America.

## COUNT IX

By Defendants Panther, Kubinski, Reinke, and Blades denial of equal treatment as described herein this complaint, amounts to violation of Plaintiffs Fourteenth Amendment rights to the United States Constitution of America.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

### Count X

By Defendants Panther, Kubinski, Reinke, Sandy, Craven, Kempf, Frueling, Blades, Stewart, Du Toit, and Buie actions described herein this complaint having a chilling effect on Plaintiffs Lance and Renee Wood, amounts to violation of Plaintiffs First Amendment rights to the United States Constitution of America.

### Count XI

By Defendants Panther, Kubinski, Reinke, Kempf, and Blades deliberate indifference against Plaintiff Lance Wood as described herein this complaint, amounts to violation of Plaintiff's Eighth Amendment right to the United States Constitution of America.

### Count XII

By Defendants Panther, Reinke, Kubinski, Kempf, Blades, Stewart, and Du Toit denying Plaintiffs Lance and Renee Wood's liberty interest amounts to violation of Plaintiffs Fourteenth Amendment right to the United States Constitution of America.

### Count XIII

By Defendants Panther, Reinke, Kubinski, Kempf, Blades, Yordy, Nielson, and Wilson denied Plaintiff Schilling's access to court. Defendants retaliated and harassed against Plaintiff Schilling as defined herein this complaint to violations of Plaintiff's First, Fifth, Eighth, and Fourteenth Amendment rights to the United States Constitution of America.

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Rodney Schilling, Lance Wood and Renee Wood respectfully pray that this Court:

1. Declare that Defendants acts and omissions described herein this Complaint, violated Plaintiffs Constitutional rights under 42 U.S.C. Section 1983, from harassment, and discrimination.

2. Enter judgment in favor of Plaintiffs for compensatory and punitive damages, as allowed by law, against each Defendant, jointly and severally, for the amount of fifty million dollars, and to be determined by a jury.

3. Plaintiff Schilling requests to return to his highest rank held with all pay and raises within the last two years and his file to be cleared of any and all assumed wrongdoings for which he was terminated.

4. Plaintiff Schilling requests reinstatement of damages for the Department of Corrections violation of the Idaho Protection of Public Employees Act, I.C. Section 6-2101, and damages for the Department of Corrections breach of his employment contract and the implied covenant of good faith and fair dealing.

5. Plaintiff Lance Wood requests that all unproven negative allegations of compromised institutional safety and security, escape, and manipulative behavior towards Plaintiff Renee Wood be removed from his institutional file.

5. Plaintiff Lance Wood requests for the court to re-open the cases of Lance Wood vs. Reinke et al. 1:11-cv-355-EJL & Lance Wood vs. Shell Wamble-Fisher et al. 1:12-cv-473-EJL, and allow Lance to proceed in these actions against Defendants.

6. Plaintiffs want to protect other IDOC employees and offenders from this type of

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

discrimination in the future.

## DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that Lance Wood, Renee Wood, and Rodney Schilling, Plaintiffs in the above action, that the information contained in the complaint is true and correct to the best of their belief and pursuant to 28 U.S.C. § 1746; 18 U.S.C. § 1621.

_____
Lance Wood

8-11-15
Date

_____
Renee Wood

08/20/15
Date

_____
Rodney Schilling

8-20-15
Date

**FIRST AMENDED CIVIL RIGHTS COMPLAINT**

31